UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOE MACOM,

               Plaintiff,

    v.

JOSEPH LEHMAN, *et al*,

               Defendants.

Case No.  C05-5338FDB

REPORT AND RECOMMENDATION

Noted for September 2, 2005

This case has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636(b)(1), Local Magistrates Rules MJR 3 and 4, and Rule 72 of the Federal Rules of Civil Procedure. Plaintiff currently is an inmate at the McNeil Island Corrections Center ("MICC"), located at McNeil Island, Washington. This matter is before the court upon plaintiff's filing of a motion for preliminary injunction. (Dkt. #5). For the following reasons, the undersigned recommends the court deny plaintiff's motion.

DISCUSSION

A.    Preliminary Injunctive Relief

The basic function of preliminary injunctive relief is to preserve the *status quo ante litem* pending a determination of the action on the merits. Los Angeles Memorial Coliseum Com'n v. National Football League, 634 F.2d 1197, 1200 (9th Cir. 1980). A party seeking injunctive relief must fulfill either of two standards, the "traditional" or the "alternative":

    Under the traditional standard, a court may issue injunctive relief if it finds that (1)

REPORT AND RECOMMENDATION
Page - 1

> the moving party will suffer irreparable injury if the relief is denied; (2) the moving
> party will probably prevail on the merits; (3) the balance of potential harm favors the
> moving party; and (4) the public interest favors granting relief. . . . Under the
> alternative standard, the moving party may meet its burden by demonstrating either
> (1) a combination of probable success and the possibility of irreparable injury or (2)
> that serious questions are raised and the balance of hardships tips sharply in its favor.

Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987) (citations omitted).  To obtain injunctive relief, the moving party must demonstrate exposure to irreparable harm absent the requested judicial intervention. Caribbean Marine Services Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988).

B.      Standard of Review Under RLUIPA

Plaintiff alleges defendants violated his right to exercise his religion as protected under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").  Specifically, plaintiff claims these violations occurred when the state barred him from attending MICC's prison chapel, took away a small silver cross he owned, and placed him in segregation and transferred him to another prison without cause for filing grievances to protect his right to practice his religion.  He seeks a preliminary injunction to enjoin defendants from barring him from the MICC's prison chapel, from preventing him from possessing his silver cross, and from segregating and/or transferring him to another prison.

Under the standard set forth in Turner v. Safley, 482 U.S. 78 (1987), to establish a violation of the right to freely exercise one's religion, an inmate asserting the violation must show the state "burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (citing Turner, 482 U.S. at 89) (footnote omitted).  To determine whether the state's action is reasonable under that standard, the court is required to consider the following factors:

> [W]hether the [state action] has a logical connection with a legitimate government
> interest, whether alternative means exist to exercise the asserted right, and the impact
> that accommodation of the prisoner's right would have on prison regulations.

Id.  Defendants argue that because plaintiff has not shown his religious rights under the First Amendment were violated, he is not entitled to the injunctive relief he seeks.  Specifically, defendants assert plaintiff is unable to demonstrate that he was prevented from engaging in conduct mandated by his religion, and that such action was not reasonably related to legitimate penological interests.

RLUIPA, however, sets forth a different standard for evaluating an inmate's claims that the state

REPORT AND RECOMMENDATION
Page - 2

1   has violated his or her right to exercise his or her religion, one that puts a heightened burden on the state.

2   It provides in relevant part:

3   > No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

>    (1) is in furtherance of a compelling governmental interest; and

>    (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. The term "religious exercise" is defined by RLUIPA to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

The Ninth Circuit has upheld the constitutionality of RLUIPA, finding that it does not violate the Establishment Clause of the First Amendment. See Mayweathers v. Newland, 314 F.3d 1062, 1068-69, (9th Cir. 2002). More recently, the United States Supreme Court itself also rejected a challenge to the constitutionality of RLUIPA under the Establishment Clause. See Cutter v. Wilkinson, ---, U.S. ---, 125 S.Ct. 2113 (2005). Just last month, furthermore, but after the parties had completed briefing on plaintiff's motion, the Ninth Circuit stated that in enacting RLUIPA, Congress replaced "the 'legitimate penological interest' standard articulated in *Turner v. Safley* . . . with the 'compelling governmental interest' and 'least restrictive means' tests codified" in RLUIPA. Warsoldier v. Woodford, --- F.3d ---, 2005 WL 1792117 *3 (9th Cir. 2005)) (citing Cutter, 125 S. Ct. at 2119).

Under RLUIPA, plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima facie claim" that the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs." Id. at *3. To be considered a "substantial burden," the challenged state action "must impose a significantly great restriction or onus upon such exercise." Id. at *4. If plaintiff is able to meet this burden, the state then must prove that "any substantial burden" on plaintiff's "exercise of his religious beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of furthering that compelling governmental interest.'" Id. (quoting 42 U.S.C. § 2000cc-1(a), citing 42 U.S.C. § 2000cc-2(b)) (emphasis in original). Further, RLUIPA "is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

On the other hand, the Supreme Court has not read RLUIPA as elevating the "accommodation of

REPORT AND RECOMMENDATION
Page - 3

religious observances over an institution's need to maintain order and safety." <u>Cutter</u>, 125 S.Ct. at 2122. Any accommodation "must be measured so that it does not override other significant interests." <u>Id.</u> The Supreme Court also has noted that Congress anticipated the court's would apply RLUIPA:

> [W]ith "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."

<u>Id.</u> at 2123 (quoting Joint Statement S7775 (quoting S.Rep. No. 103-111, p. 10 (1993), U.S.Code Cong. & Admin.News 1993, pp. 1892, 1899, 1900)). Indeed, "prison security is a compelling state interest," and "deference is due to institutional officials' expertise in this area." <u>Id.</u> at 2124 n.13. Therefore, should an inmate's request for religious accommodation "become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." <u>Id.</u> at 2125.

C.   <u>Plaintiff's Claims</u>

In the Ninth Circuit, "a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." <u>Id.</u> at *9 (citing <u>Sammartano v. First Judicial Dist. Court</u>, 303 F.3d 959, 973-74 (9th cir. 2002)). As noted above, in his motion plaintiff provides three reasons for why his request for injunctive relief should be granted. With respect to the first and third reasons, the undersigned finds it inappropriate to grant plaintiff's request, as he has failed to establish the existence of a colorable First Amendment claim, and thus the presence of an irreparable injury.

Plaintiff first asserts defendant John Barnes told him he would not be allowed in the prison chapel, unless he asked and received permission from the Seventh Day Adventist Church to practice Christianity in conjunction with Native American practices. Plaintiff further asserts that decision by defendant Suss was upheld by prison grievance coordinators "at all three levels." The documentation plaintiff attached to his motion, however, does not support this assertion. <u>See</u> Plaintiff's Motion, Exhibits E-1, E-2 and E-3; Declaration of Joe Macom In Support of His Motion for Preliminary Injunction ("Macom Declaration"), p. 2-3, ¶ 7, Exhibit A attached to Plaintiff's Motion. All that documentation shows is that he was told by defendant Suss that to "file a dual preference as Native American/Seventh day Adventist," he needed to "contact both religious authorities through written correspondence, and then submit all approvals to the facility chaplain for verification." Plaintiff's Motion, Exhibits E-1, E-2 and E-3.

1 It appears from the record before the court, furthermore, that plaintiff, like any other inmate at his
2 correctional facility, is "welcome to attend religious services of any faith when they are offered," even
3 though those services may be of a "different religion than is stated on the inmate's religious preference
4 form" or if the inmate has "not filled out a religious preference form." Declaration of Thomas J. Suss
5 ("Suss Declaration"), p. 1, ¶4, Exhibit 1 attached to Defendants' Response to Plaintiff's Motion for
6 Preliminary Injunction. It also appears "[a]ll inmates are welcome to attend" the Seventh Day Adventist
7 sponsored religious programs and other events that are put on at plaintiff's correctional facility. Id. at p. 2,
8 ¶ 5. Thus, it seems plaintiff is free to attend both Seventh Day Adventist activities and services held in
9 MICC's prison chapel, regardless of his religious beliefs. Plaintiff has provided no evidence that he in fact
10 has been barred from the chapel because of those beliefs.

11 Plaintiff's third reason for requesting preliminary injunctive relief is that defendants placed him in
12 administrative segregation and transferred him to another prison in retaliation for having filed grievances to
13 protect his right to practice his religion. To state a claim for retaliation, however, plaintiff "must allege
14 both that the type of activity he engaged in was protected under the first amendment and that the state
15 impermissibly infringed on his right to engage in the protected activity." Rizzo v. Dawson, 778 F.2d 527,
16 531 (9th Cir. 1985). Plaintiff "must allege that he was retaliated against for exercising his constitutional
17 rights and that the retaliatory action does not advance legitimate penological goals, such as preserving
18 institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994). Here, plaintiff
19 has failed to state a valid retaliation claim.

20 It appears plaintiff was placed in administrative segregation on April 9, 2003, due to "concerns"
21 regarding his "activity within the Indians of All Tribes (IOAT) group" while at the Monroe Corrections
22 Complex ("MCC")/Washington State Reformatory ("WSR"). Plaintiff's Motion, Exhibit G. According to
23 the order authorizing plaintiff's segregation:

24 A number of IOAT members have been identified as grouping together to resist facility
mandated changes on how this religious group functions within the facility. The
25 resistence of this group is a threat to the security and orderly operation of the facility.

26 Id. Plaintiff asserts that WSR officials "knew well" that he had not engaged in resisting anything, and that
27 the only challenges to the "facility mandated challenges" were "formal grievances" he filed to protect his
28 right to practice his religion. Macom Declaration, p. 5, ¶ 14.

Plaintiff also relies on an unaddressed and undated letter he wrote, in which he stated that he was

REPORT AND RECOMMENDATION
Page - 5

transferred to the Washington State Penitentiary ("WSP") pending review of the order placing him in administrative segregation, to support his retaliation claim. Id.; Plaintiff's Motion, Exhibit H. Except for his own bare allegations, however, plaintiff provides no evidence that he was administratively segregated or transferred to WSP for reasons other than those provided in the above quoted order. It appears plaintiff was recommended for, and indeed has been, released from administrative segregation (see documents attached to Plaintiff's First Amended Civil Rights Complaint ("First Amended Complaint"), pp. 7-9 (Dkt. #4). Obviously, plaintiff also is no longer at WSP. In any event, there is no evidence in the record that defendants currently are threatening to segregate or transfer plaintiff, either for legitimate penological or constitutionally improper purposes.

With respect to the second reason for plaintiff's request, that defendants have kept his silver cross from him, plaintiff claims he was given the cross by "[o]utside sponsors" of a Christian function in which he had participated while at WSP. Macom Declaration, p. 2, ¶ 5. He further claims that the cross was on his "approved property list" when he arrived at MICC from WSP, but that defendant Suss then directed him "to turn over the cross as contraband," and told him that he "would not be allowed to have it." Id. at ¶¶ 5-6. Plaintiff claims that the loss of the cross has adversely affected his religious practice, in that the cross was a "constant reminder" of and kept him daily focused on his faith, and that he no longer feels as strongly connected to his faith as when he had it. Macom Declaration, p. 4, ¶ 11.

Plaintiff arguably has demonstrated that the prohibition on him keeping his cross is an irreparable injury. In the Ninth Circuit, "a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." Warsoldier, 2005 WL 1792117 at *9 (citation omitted). In addition, "'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury' for purposes of the issuance of a preliminary injunction." Id. at *10 (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976). As noted above, furthermore, plaintiff can demonstrate a *prima facie* First Amendment claim under RLUIPA by showing the challenged state action amounts to "a substantial burden on the exercise of his religious beliefs." Id. at *3.

Plaintiff claims his faith dictates that he practice Christianity in conjunction with Native American practices. Macom Declaration, p. 3, ¶ 7. As noted above, plaintiff further claims that not being able to possess his cross has adversely affected his ability to practice and remain as fully connected to his faith as

REPORT AND RECOMMENDATION
Page - 6

he was prior to the cross being taken away from him. Id. at p. 4, ¶ 11. It seems, therefore, that plaintiff has made at least a *prima facie* claim under RLUIPA that in taking away and prohibiting him from possessing his cross, defendants actions have placed a substantial burden on his right to exercise his religious beliefs. Thus, to rebut that claim, defendants have the burden of showing that their actions are "in furtherance of a compelling governmental interest" and the "least restrictive means" of furthering that interest. Warsoldier, 2005 WL 1792117 at *4.

As discussed above, however, the basic function of preliminary injunctive relief is to preserve the *status quo ante litem* pending a determination of the action on the merits. See Los Angeles Memorial Coliseum Com'n, 634 F.2d at 1200. Plaintiff has not shown that this basic function will be served here, as he claims he no longer has the cross, and it appears that the cross currently is in the possession of some other third party. See Plaintiff's Motion, Exhibit D. In other words, because neither party possesses the cross, there would be no purpose now in issuing a preliminary injunction ordering defendants to return it or enjoining them from prohibiting plaintiff from having it. Accordingly, plaintiff has not shown that he is entitled to preliminary injunctive relief at this time.

## CONCLUSION

Because plaintiff has not shown that he is entitled to preliminary injunctive relief, the undersigned recommends the court deny his motion.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set this matter for consideration on **September 2, 2005**, as noted in the caption.

DATED this 18th day of August, 2005.

Karen L. Strombom
United States Magistrate Judge